309-619 Enraged Marriage of Elizabeth Bowers Appellee by Richard Davidson vs. Richard G. Bowers, Jr. Appellant by Celia Gamrath Ms. Gamrath, you may proceed. Good afternoon. May it please the Court? I'm Celia Gamrath of Schiller, DeCanto, and Platt here on behalf of the appellant, Richard Bowers. This case involves a 14-year marriage and a $2 million issue before this Court. The trial court made two critical mistakes in classifying and valuing the party's marital property and property acquired during the marriage. First, the court erred in considering speculative sales costs and expenses in valuing the party's real estate. Second, the court erred in classifying shares of stock, an annuity, and a life insurance policy all purchased during the marriage with income earned during the marriage. As we state in our brief, we pray that this Court reverse those rulings and award Mr. Bowers $2 million in property to compensate him for his marital contributions and non-marital contributions. What did Mr. Bowers put on at the trial level about his contribution of the marital and non-marital and how would the judge found it to be non-marital, how it was purchased? They really didn't spend very much time on that, did they? With respect to the trial court record, Your Honor, the record certainly shows that this was a 14-year marriage. It shows that Mr. Bowers really came to task when the company was facing a critical crisis by stepping up and pledging his own assets to make sure that the company would survive. In that 14-year period, indeed, the company generated $20 million due to his initial efforts in addition to contributing non-marital property to the acquisition of much of the marital property and expenditure of expenses. He put up this collateral, but then the company was paid back. They never touched the collateral. They never foreclosed on anything. It was put up, but then the buyout occurs and the money is all paid back without ever using any of that collateral or ever having to touch it or to utilize any of those provisions, correct? That's true. And we're not arguing that the 266 shares of stock are marital because of that pledge, although that certainly contributed to it. Our main point is that under the statute, all property acquired during the marriage is presumptively marital property. In this case, Linda Bowers acquired 266 shares of stock. She did that because Richard Bowers pledged collateral so that she could get a loan. She paid down that loan with earnings she generated during the marriage. In this case, under Joint, under Lundell, and under Schmidt, what happens is when those earnings, distributions, income, whatever the spouse wants to call them, get kicked out of the company, that becomes marital income. It's generated from personal effort. And under subsection A-8, it is absolutely marital property. But, you know, the trial court, when the re-hearing said, really, your client conceded this point at trial, and I know there were different lawyers involved in this, but conceded the point that the assets were non-marital. And then he found that Linda's position, by clear and convincing evidence, that they were purchased with Linda's non-marital funds, and careful steps were taken, I think, to preserve, or something like that was the language used. But, you know, what in the record shows that Richard really contested the non-marital nature of this? To that point, Your Honor, I really think that the trial court misunderstood Richard's contention at trial. It wasn't the trial in the term she knew. And the record is somewhat ambiguous as to what the evidence was. But if you look at the pretrial memo, which is contained in the supplemental record, I think there's a lot of markups and inconsistencies in there that make it clear that Richard Bowers did indeed contest the retained earnings. He never asked for the shares of stock to be afforded to him, nor is he asking at this point in time. He is asking for the marital value of those stocks. And that was clearly his position within the trial court. He testified to it. The pretrial memo talks about that. And his counsel did certainly argue those points. With respect to the court's finding. Well, weren't those assets purchased with non-marital assets? That's where the court got it wrong. And that's where the court's decision is directly contrary to this court's ruling in Joint and subsequent rulings in Schmidt and Landau. Because those cases demonstrate that when you originally have a non-marital corporation, in this case, we don't contest that the original 500 shares of stock were non-marital property. They were. But when that company was kicking out distributions, dividends, whatever it is, and they were attributable to Linda's personal efforts, Joint, Landau, and Schmidt, all say once they actually get distributed and severed from the corporation, they're no longer corporate property. They're individual income. And in this case, because they were acquired during the marriage, they're marital property. In Schmidt, the trial court found exactly what this trial court found here. And the appellate court reversed under a manifest weight of the evidence standard. The appellate court said, we don't see it. This is not clear and convincing evidence. We know that the husband in that case works the business. We know that he had the ability to shield his income by keeping it in the corporation. He could kick out what he wanted to, and he could call it salary, dividends, distributions, whatever he could call it. That's exactly what we hear. Linda and her partner called their salary, their income, their distributions, and their dividends, whatever it is that they wanted to. But once they severed that property from the premarital corporate assets during the marriage, it became marital property. And that's exactly why those 266 shares of stock are marital property, because they were purchased with marital income generated during the marriage. What you're saying is 500 and some shares that she brought into the marriage are clearly non-marital. Am I correct? Correct. The earnings attributable is 500 and some odd shares. Once that income comes into her possession while she's married, that becomes marital. Correct. What you're saying now comes at the opportunity to acquire 200 and some shares out of that same corporation, which are only acquired through collateral security provided by the spouse. Loan is made, but all of the income earnings attributable is 267 shares, comes into the possession of the spouse, become marital property, and are used, basically, by that stock. Correct. And so that's converting that stock into marital property. Is that your basic convention? Correct. The 266 shares. That's all I'm talking about. Yes. Those shares were purchased by distributions from themselves and the original 500 shares. Which is all your contention is, which is all becomes marital property. Yes, correct. Now, the retained earnings at this point, the retained earnings attributable to 533 shares of stock, we are not seeking to invade those corporate assets at this point. Were this court to grant us relief on the $2 million that we're seeking, Linda Bowers would still be left with $20 million in assets, virtually all of which was acquired during the marriage, 14 years of marriage. Is there a difference between money that you receive? This wasn't through personal efforts. They got dividends, right? I mean, she got dividends. Mrs. Bowers testified that she got dividends. It wasn't through her personal efforts. And she testified that it wasn't due to her personal efforts. So did Mr. Schmidt, in the Schmidt case, testified to the same thing. And the court said, how do you say that? You were working the business. You were running the business. In this case, we have the same thing. Linda wore many, many hats in this case. It was undisputed. It was undisputed that were she to leave, it would take more than one person to replace her. It was undisputed that she and her partner used the corporate accounts as their own personal piggy bank. Well, you have a Subchapter S. So everything flows. It can be categorized as salary. It can be categorized as dividends, depending on your tax advantages. Exactly. But the argument of the prior case for the Subchapter S, presumptively, is personal efforts. It's presumptively personal efforts. And the fact is, Linda got control of what she called salary and what she called dividends or distributions. And when the court looks at the joint case, the court looks at who had substantial influence over those decisions. The testimony shows that Linda did have substantial control. Linda testified in cross-examination that when somebody needed a deck for their house, they took a distribution or a dividend. When they needed money for a wedding, they took a dividend. Sometimes the corporate resolutions would be made contemporaneously, and sometimes they would be made after the fact. And she testified to this on cross. Year-end, her and her partner would equalize those distributions. Greater control cannot exist. This was essentially as though she was a sole shareholder, because never in 31 years had there been a dispute. And without question, she and her partner went to the CFO to get distributions when and if they needed them. You can't just look at a $300,000 salary and say that's all there is in terms of marital property. Her salary had not increased in 8 to 10 years, despite this enormous growth. And we also know that $300,000 was not adequate, because it wasn't covering what her personal expenses were. And we know that how? Because she kept getting dividends and kept getting distributions kicked out. And all that I'm saying is when that happens, and according to joint, until they are severed. Once they are severed, they become marital property. So to that is everything purchased with that marital property. And in this case, it started with the 266 shares of stock. It also counted towards the annuity and the life insurance policy and the funding of the bank account. All of which totals approximately $3.3 million in marital property that the trial court failed to account for. If you take that 3.3 million and you award Richard Bowers the 60% to which the court thought was a fair distribution of property. It would entitle Richard to approximately $2 million in additional marital property of the 3.3 that was not accounted for. Again, this would leave Linda Bowers with approximately four times the wealth of Richard Bowers or $20 million. Even giving up that $2 million. In addition, she also will continue to generate nearly $1 million a year in annual income. Isn't there a distinction though between Lindell and this case where we really emphasize in the Lindell case that he was the sole shareholder, sole decision maker. And even though you say that in 31 years there had been no disagreement between these partners. Linda wasn't the sole shareholder and she wasn't the sole decision maker. She did not unilaterally decide what happened with the retained earnings and the money that came into that corporation. She had never shared her partner's agreement to do that. Although her partner's agreement often came after the fact. And that's what the testimony in the record shows. So whereas in joint it was clear that the shareholder was a minority shareholder. And therefore the courts said you don't have enough control. In Lindell there was one, whereas here we have two. And it was clear in Lindell he had 100% control. Here I submit to you that Linda had the same amount of control as Mr. Lindell. Because she and Rosemary took, as they wanted, they would do corporate resolutions after the fact. And then they'd come and they'd sit down once a year at the end of the year of shareholder's meeting and say to our CFO, what was taken? What did this shareholder take? Make sure that I'm equalized. And that's how it worked. And that's how it worked for all these years. Thank you. Your Honor, joint Schmidt to Lindell. I submit that those cases were designed to address the exact situation that we have here. Number one, to follow the language of A8 of 503, which is to say income generated from personal effort is indeed marital property, even if it comes from non-marital sources. Just because Linda chose to call it a distribution or a dividend doesn't make it so. In that case where the court has said, indeed, if it is a distribution or a dividend, it's still marital property. It doesn't matter what you call it. Well, that's not quite true about Schmidt. I mean, in Schmidt the situation was the distributions to the partners was based on the respective ownership percentages. And there was nothing indicating it was anything but it was their personal efforts. I mean, that's what Schmidt found. So then in Schmidt they said there was, in the record, the record wasn't sufficient to rebut the presumption that the distributions were based on personal effort. Right. And the appellate court made that finding contrary to the trial court. And I'm asking this court to make that same finding. What is sufficient in this record to show that the distributions were not attributable to Linda's personal effort? When she wore the hats that she wore, when she worked this business night and day, she did a laudable job. There's no question about it. I guess in this case the trial judge thought that the clients were taking different positions. There was a position at trial and then a different kind of position for the rehearing. Well, all of a sudden they changed sides. They were agreeing to non-marital status at one point, and now they're saying, well, no, we didn't agree to it. I do submit that the pretrial memo is quite ambiguous. I think that the trial court misinterpreted Mr. Bower's position. And also the trial court didn't have the benefit, nor did Mr. Bower's counsel, of the Schmidt case prior to motions for reconsideration. So that could have added to the confusion. Likewise, Lindell was decided after the trial court's decision came down. And I would just quote from Linda, I mean from Schmidt, which talks about the dividends and distributions, when it says, husband failed to establish by clear and convincing evidence that the fund used to purchase the assets were not distributions or dividends, and thus income attributable to personal efforts. Here, we know they were dividends. We know they were distributions if you believe Linda's testimony. So whether it's salary, income, dividends, or distributions, the law is clear when they are generated in this manner. And not just simply a, thank you. May I finish my thought? When it's not simply a passive appreciation as somebody would own a stock from another company that they're not working, this is a different situation and designed to prevent the fraud on marital estate that this court did recognize in joint Schmidt-Lindell. Respectfully, we would ask for the request in our brief. Thank you. Thank you, Ms. Gamran. Mr. Davidson, you may respond. May it please the court. Your Honor, obviously we have markedly differences of opinion in several respects. First of all, what happened at trial. Secondly, how to properly interpret the appellate court cases. The trial court, the pretrial stipulation that was entered into by the parties, which is referenced in the record at A40, very clearly shows in two places on pages three and five, linguist system, stock, Linda, classification, non-marital. Pages three, record A40, record A42, linguist system, stock, classification, non-marital. This is what Judge Bandubelli relied upon in the statement in his ruling that it was not contested at trial. Rick agreed. He stipulated that all of the linguist system stock was non-marital. Now, we get to this court, and Rick's new counsel begins to argue that, oh, no, no, no, that's not what we want, and the pretrial stipulation is ambiguous. Well, there's certainly nothing ambiguous as I read pages three and pages five of the pretrial stipulation. But let's get to the heart of the issue here. There's no question that the stock that Mrs. Bowers bought, the 266 shares, shortly after the marriage began in 1997, was purchased with money that she received from linguist systems. Every penny of the purchase price and the loan that was taken out to pay off the shares of the stock was paid with money that she got from linguist systems. The money that she got from linguist systems was attributable to two factors. Number one, she already owned 500 and some shares from before the marriage. So the dividends that she was receiving from that stock under section regarding the income from a premarital asset under section A7 and A8, income from property acquired by methods under 1 through 7, which is premarital property, that income standing alone belongs to her as income from nonmarital property. Secondly, she was getting additional income from the 266 shares that she purchased. Well, it can be. That dividend can be something else that's related to personal efforts. It can be. Conceivably, it can be. It can be both. But you're saying it's okay from that 500 and some shares, dividends attributable to that nonmarital income. Correct. Unless it's used for something to acquire a marital asset. Unless it is attributable to personal efforts. If it's not attributable to personal efforts, it's just a pure dividend, like owning a share of General Electric. But can that dividend be converted into marital property? It can be if she puts it in his name, but if she purchases other property with nonmarital income, A2 clearly states that property acquired with property that was acquired before the marriage or in exchange for property acquired before the marriage is also nonmarital. So if it can be traced, which it was very clearly presented, there was no factual dispute whatsoever, every nickel that went to buy that 266 shares came from LinguaSystems. Never went through a joint bank account. It never went into Rick's name. The only issue that we have to decide with respect to that, those dividends, is was it or was it not attributable to Linda's personal efforts? Now, for example, Your Honors, if Linda was working at General Electric, but she also owned several million dollars' worth of General Electric shares, she would be receiving dividends from her premarital General Electric stock. The question would be, is that dividend income that she's receiving from General Electric, even though she also works there, is that dividend income attributable to her personal efforts? Now, clearly in that case, you would hold as the district and the circuit court would hold that clearly it is not. She was paid a salary for her personal efforts. The dividends reflect passive income, income that's generated just from the profit of the business as a whole. Now, this business is much more than just Mrs. Bowers and Mrs. Huizinga. There are 40 employees. It's got a $4 million payroll. This is a fairly good-sized business. And to say that every nickel of income that was received by that corporation or that was generated in profits by that corporation over a 14-year marriage was attributable only to Mrs. Bowers' personal efforts belies the facts. The facts are that in order to determine whether or not personal effort contributed value to non-marital property, which is what we have here, the stock is non-marital. Rick agreed it was non-marital. The only issue is, did Linda contribute marital assets in the form of her personal efforts toward the purchase of that stock, which would create a right of reimbursement under Section C-2, 503C-2 of the Marriage and Dissolution of Marriage Act? That's the question that has to be answered by the court. That is the question that was answered by the circuit court. Linda presented very clear evidence from her expert witness that she had been reasonably compensated for her personal services. Rick even agreed in his testimony that she was fairly compensated for her personal services. If the marital estate has already received the value of her personal services through the salary and benefits that she took out of the corporation, there's nothing more to reimburse the marital estate for. It's already gotten what her, the value of her personal services. The suggestion of your opponent is that the $300,000 wasn't enough. You'd have to give that more. Well, two points on that, Your Honor. First of all, it wasn't limited to $300,000. It was a $300,000 salary, plus she paid all of her own personal and Rick's own personal income taxes over and above what the income taxes were on the corporation. She paid for a car, she paid for insurance, she paid for travel, she paid for charitable donations. All of that came from the funds that she distributed to herself from the corporation. All of that is clearly marital property. None of that was used to buy this stock. And the question, that precise question has been faced by the appellate court any number of times. The question is not could she have received more. The question is did she receive adequate compensation, a reasonable salary for her services? The expert witness we called said she did. Linda herself said she did. And Rick himself said she was adequately compensated. There's no evidence that she was not adequately compensated. She received several hundred thousand dollars for acting as the president of a small business in East Moline, Illinois. Pretty good work. She also benefited from the increase in the value of that business over those years. And that's precisely what Rick is trying to get at is the increase in value. And if you see A7 clearly states that non-marital property consists of the increase in value of property acquired by one of the methods listed in 1 through 6, irrespective of whether the increase results from the personal effort of a spouse, subject to the right of reimbursement under subsection C. You know, can I get you off track for a second? Because before you're finished with your time, I've got a question. This 10% when the trial judge netted out the property, okay, and the 10% deduction, what principle of law is that coming from? Well, what he was addressing was that the parties had agreed at the beginning of the case that the marital and non-marital assets should be compared on a cash basis, cash value. And he was valuing the real estate at cash value, meaning after the selling expenses, what would it net? Are you familiar with any other case that does that? I'm not familiar with another case that does that, and I'm not familiar with another case that doesn't do that. He was simply addressing what he believed to be the party's stipulation. So he didn't let it out as if they were both being sold. He did that, correct. As under some hypothetical method. Under a hypothetical sale, correct. Assuming it was 10%. Exactly. He took off selling expenses, which he explained in his ruling. The point being that he was trying to compare cash to cash. And obviously real estate is not cash. Cash in the bank, which they also had a lot of, was cash, and he was trying to compare apples to apples instead of apples to apples. So he picked this number up, this 10%. Well, he took a 7% commission, and then he took off some other expenses. He announced that at the beginning of the trial and that that was his policy, and that's how he wrote it. I don't know where he came up with it other than what he explains in his order of taking judicial notice of selling expense. I don't know. We didn't have evidence on that point. Is that contested here? Pardon me? Is that an issue here, the 10%? Well, we certainly think that it is appropriate, but obviously if the court's going to add back 10% to her real estate, it has to add 10% back to his real estate because he did it the same way across the board. Can you go back to the point you were going on earlier? The issue here is the right of reimbursement. Rick is now arguing that this increase in value of this stock, namely retained earnings, is subject to being distributed because all of it magically, apparently, is created by Linda's personal efforts. Well, Linda's been compensated for those personal efforts, and the Joint case and the Schmidt case and the Lundahl case all state that the opposing party failed to show that the compensation for personal efforts had been made through the payment of salary and other distributions in those cases. In Schmidt, at page 230, Kim failed to show that the funds from his interest in Colonial were not attributable to his personal efforts, and these funds are presumed to be merited property. We showed that. We showed that she'd already been compensated. The same with Lindahl. Lindahl was the sole owner, and thus the income of AIS during the marriage was attributable to Lindahl making such income merito property. Again, that's not the point here. The point is she owns 50% of this business. She can't unilaterally do anything. I think people that have partners in their businesses would be very surprised to learn that Rick's argument that where you get along with your partner and where you reach accommodations and consensual business decisions over a number of years and create a very successful business, that you can somehow act unilaterally against the legal rights of your partner and declare dividends without asking her and sell the business, apparently, without asking her. Linda didn't own controlling interest in this company. She could only make distributions and set her salary in conjunction with Mrs. Huizenga. They had to act jointly. There's no evidence of hostility, though. There's no evidence of hostility, but they circle back around to the joint case where, you know, joint is a little bit like loose lips sink ships. The issue in joint wasn't control. The issue in joint was the man owned a third of the business and that this court, this very court, held that the retained earnings of that business were not marital property. And the argument was made in that case by Mrs. Joint that he had substantial control over the distribution of those assets because he was the company president. And the court said, no, we're not going to get into that. He only owned a third. There were three members of the board of directors, and he clearly could not distribute money without the concurrence of at least one other member of the board of directors. That's exactly what we have here. Thank you. That's exactly what we have here. This case could not be more squarely on point with the joint case. And this language that is quoted in the joint case from the circuit court's ruling, where the circuit court states that this is not to say that there isn't any other set of facts under which we would find retained earnings to be marital property. Again, it's not the holding in that case. There's no holding in that case that the retained earnings are marital property. Just the opposite. The holding in that case is the retained earnings are not marital property. And the discussion in that case about whether or not control would make those retained earnings into or transmute them into marital property is just dicta. Those were not the facts of that case. We don't know how that case would have come out had he had more than a one-third control. And speculation as to what is enough control to make that those retained earnings marital property is not the issue in that case. So what we have here clearly is that Mrs. Bowers has paid herself a very substantial salary, very substantial benefits over the course of all these years. She's also built up a very successful business, and it's generated a lot of retained profits. Rick did nothing whatsoever to be entitled to a share of that. His pledge of collateral for five months in 1997 was compensated. The record shows that he was paid $2,000 for the use of his collateral, which he readily accepted. He lost not a penny. Not a penny of marital property was put into the purchase of that stock, and it was properly classified as non-marital. The only issue being the right of reimbursement and the right of Mrs. Bowers carried her burden of proof. The right of reimbursement was shown not to be an issue. Thank you, Your Honor. Thank you, Mr. Davidson. Thank you. Ms. Lombard, you may reply. Thank you. If I could just start with issue one, and that has to do with the 10% discount. I want to be clear that the $33,000 that we are requesting is the net amount. We were factually honest with this court in saying there was an error on both sides, and if we were not factually honest, we would have been here seeking a full $82,000. The number, in other words, isn't really contested, the $33,000. I have heard no contest with the $33,000. $33,447, right? Right. And you had asked if there's another case that did it, and counsel said no. I would say Beckendorf says you can't do it. The trial court tried to, and Beckendorf said no, you can't. So I stand on my brief with respect to that point. In terms of issue number two in these shares of stock, the question has been raised, what did Richard Bowers do to contribute to this? I submit that you have many, many housewives, househusbands coming into this court. They've never worked it in their life. We don't have that situation. Richard Bowers did and contributed appropriately. But the question is, what is marital property, and what's an appropriate distribution? In this case, the court found he was entitled to 60% of the marital estate. So to the extent he didn't have to work the business to get a marital share of that stock or the retained earnings. I go back to the point that my opponent said, and he made the comment about the salary and said, well, her compensation wasn't limited to $300,000 in salary. She also got payments for income tax, car, health insurance, travel, other personal expenses. And his words, I'm quoting, he said, those were clearly marital property. Well, doesn't that just beg the question, how could Linda Bowers choose what's marital and choose what's not? That's not what the law provides. Once she got it kicked out, whether it was for a deck in her house, whether it was for the wedding expense of her partner, whether it was for travel or funding of an annuity, she accepted that as marital income, and it was generated from her work efforts. It is marital property by definition, and this is where we get into mixing apples and oranges. Our position is under A8, which talks about personal effort. My opponent seems to just write out those words, personal effort. But when personal effort generates income from a non-marital business or otherwise, it is by definition marital property. Again, going back to Schmidt, we have virtually the same exact record where the trial court found in Schmidt, husband was adequately compensated, no reimbursement, everything's non-marital. The appellate court said, no, it's not fair and convincing evidence. We're looking at the facts, we're looking at the record, and husband can't make that choice to say, this is non-marital, this is marital, pick and choose. Once the retained remains or distributions get severed from the corporation, and this again is your decision in joint that says until it's severed, it remains a corporate asset and follows the character of the stock. Once it is severed, it takes on the character of marital property. Therefore, everything purchased during the marriage is also marital property, including the 266 shares of stock, the annuity, the life insurance policy, and the bank accounts, which are articulated in my brief. What about the process, the procedure, that at trial people don't contest something and then later on, in hindsight, they contest it? What's the process there? Your Honor, with respect to that, my brief goes through the waiver argument. And I talk about how the waiver is a limitation on the parties and not the court and a bunch of different exceptions as to why this court should, even if it did believe Richard Powell waived it, should look at this issue. But also, when you look at the pretrial memo, and I see three and five of this page, of this pretrial memo, but what the trial court and opposing counsel ignored are all those notations within that talk about see below, disputed, Richard slash Linda. There's question marks all over this pretrial memo, and I think it is unfair to box it in when you don't, when you're not looking at the big picture. What does non-marital mean? When they say something is non-marital, what does that mean? Non-marital means non-marital. But when there's a caveat that says see below, for example, Richard Bowers was contesting, certainly, the retained earnings in those steps. Thank you. If I may conclude and answer your question, I would just say that I do believe that this is ambiguous, and that's where it is, because of those slash marks and the see below and see above and all of that. But I would also say that my opposing counsel talks about reimbursement. If this court were inclined to agree that all of the shares of stock, including the 266, were non-marital property, Richard Bowers is absolutely entitled to reimbursement from the retained earnings of the entire corporation. And that's under C2, and that is exactly the Lundell decision. The court said we recognize that this corporation is non-marital property, but the retained earnings aren't. They're marital, and they're marital to the extent that marital estate was not adequately compensated. Again, Your Honor, that is a different subsection, and that was originally certainly argued at the trial court. We know that because we know retained earnings screen marital property, and we know that the annuity does too, and so does the life insurance policy. Thank you. If I could just finish my thought with one sentence. Just simply to say, in that pretrial memo when Richard Bowers said the stock is non-marital, he intended to say that stock should stay with Lundell. And indeed he wants it, but he is entitled to his fair share of the value of that stock. And in terms of equalizing the payment, his justified percentage is 60%, and that would be the $2 million that we request. I thank Your Honor for your attention today. Thank you. Thank you, counsel. Thank you both, counsel, for your arguments in this matter this afternoon. It will be taken under advisement, and the written disposition shall issue. We'll stand in brief recess for panel discussion. Thank you.